OPINION
Appellant, Felicia Johnson, appeals from the decision of the Butler County Court of Common Pleas, Juvenile Division, to terminate her parental rights and grant permanent custody of her six older children[1] to the Butler County Children Services Board ("the Board").[2] We affirm.
On August 31, 1995, the Board filed complaints alleging that appellant's eight children were dependent and neglected. The original complaints reveal appellant had been evicted from her apartment and was living with a friend. Appellant's friend had four children and, therefore, appellant, her friend, and twelve children were living in a four bedroom apartment. Pursuant to an ex parte emergency order, temporary custody of appellant's eight children was given to the Board, pending a hearing. On September 1, 1995, Fred Miller was appointed guardian ad litem for the children. On November 7, 1995, concluding the children were dependent and neglected, the court continued temporary custody with the Board. On February 26, 1997, appellant's maternal great-aunt was given custody of the two youngest children. On March 28, 1997, the Board moved for permanent custody of appellant's six older children. The report of the guardian ad litem recommended that the motion be granted.
On July 22, 1997, the court conducted a hearing on the motion to terminate appellant's rights and grant permanent custody to the Board. The court concluded that the children could not return to appellant's custody within a reasonable time, terminated appellant's parental rights, and granted permanent custody to the Board on August 1, 1997. Appellant filed a timely notice of appeal and presents two assignments of error for our review.
In the first assignment of error, appellant argues that the trial court erred in terminating her parental rights and granting permanent custody of her six older children to the Board.
Initially, we note that natural parents have a constitutionally protected liberty interest in the care and custody of their children. See Santosky v. Kramer (1982), 455 U.S. 745, 769,102 S.Ct. 1388, 1394. A motion to terminate parental rights "seeks not merely to infringe that fundamental liberty interest, but to end it." Id. at 1397 (citation omitted). Therefore, in order to satisfy the demands of due process, the state is required to demonstrate by clear and convincing evidence that the applicable statutory standards have been met. Id. at 1403. Clear and convincing evidence requires that the proof "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of syllabus.
Upon the filing of the permanent custody motion by the Board, the court was required to hold a hearing to decide "if it is the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion." R.C. 2151.414(A). In order to grant the Board permanent custody, the Board must demonstrate that it is in the best interest of the child and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents;
 (2) The child is abandoned and the parents cannot be located;
 (3) The child is orphaned and there are no relatives of the child who are able to take permanent custody.
R.C. 2151.414(B).
At a permanent custody hearing, the court is required to consider any relevant factor to determine a child's best interest. R.C. 2151.414(D). These factors include, but are not limited to:
 (1) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through his guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
Id.
When terminating parental rights and granting permanent custody to a public children services agency, the court must additionally find that one of the following situations exist. R.C.2151.414(E). The situations in pertinent part include:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. * * *
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child * * *.
 (3) The parent committed any abuse * * * against the child, caused the child to suffer any neglect * * * or allowed the child to suffer any neglect * * * between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the the motion for permanent custody[.]
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]
* * *
 (9) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect[.]
 (10) The parent has committed abuse * * * against the child or caused or allowed the child to suffer neglect and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety[.]
 (11) The parent committed abuse * * * against the child or caused or allowed the child to suffer neglect * * * and a sibling of the child previously has been permanently removed from the home of the child's parents because the parent abused or neglected the sibling.
(12) Any other factor the court considers relevant.
Id.
If one of these situations apply, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." Id.
A thorough review of the record indicates clear and convincing evidence to support the decision of the trial court. When the original complaints were filed by the Board on August 31, 1995, appellant did not have adequate housing for her children. The case plans have consistently, over approximately two years, maintained obtaining adequate housing as a goal for appellant. However, appellant currently lives in a small two bedroom apartment with a boyfriend. Ginger Kavalauskas, appellant's case worker from the Board, indicated the apartment is too small to provide suitable housing for appellant and six children.
Appellant's employment has been sporadic at best, including keeping each of her last two jobs for approximately one month. Appellant briefly worked at a hospital, but quit because she did not like being around sick people. Also, appellant testified that, at the time of the final hearing in July 1997, she was not working due to a medical condition. At the time of the final hearing, appellant was five months pregnant and admitted using cocaine in June 1997 because she was depressed. The evidence also indicates appellant had not regularly kept her scheduled supervised visitation appointments or arrived late.
After missing three scheduled appointments, appellant submitted to psychological examinations on January 20, 1997. The evaluation was conducted by Dr. Charles Lee, a psychologist associated with the Children's Diagnostic Center. Dr. Lee conducted both an intelligence quotient ("I.Q.") test and a personality profile. The intelligence quotient test revealed that appellant has an I.Q. of sixty-one, which is considered mildly mentally retarded. Dr. Lee also testified that appellant's personality profile was characterized by "poor coping skills." Overall, he concluded that appellant would have difficulty functioning day-to-day as an effective parent. Further, Dr. Lee noted that this problem would be magnified when the parent was attempting to raise six children.
The record also reveals appellant does not have a reliable support structure. Her current boyfriend, William Kilpatrick, while offering to help raise the children, refused to submit to a psychological evaluation. Also, appellant's past personal relationships do not establish a credible basis for concluding Kilpatrick will provide appellant with long-term stability or support in raising her children. Further, appellant's mother is on disability and would have difficulty in assisting appellant in raising the children.
Antonio Eberhardt, appellant's probation officer, testified that appellant was incarcerated for five months for three counts of felony theft. Since her release in July 1996, appellant has been on probation. Appellant began studying for her general equivalency diploma while incarcerated, but did not complete the work after her release. Also, due to her positive test for cocaine in June 1997, appellant was temporarily placed under house arrest. Appellant failed to report to a mandatory daily reporting program for her substance abuse, although Eberhardt testified that as of the final hearing appellant was back in the daily reporting program.
Kavalauskas testified she had personally observed appellant since October 1994. Upon numerous personal observations of appellant before her children were removed in August 1995, Kavalauskas testified that appellant "appeared to be overwhelmed by the number of children in the home." Kavalauskas also noted that appellant had difficulty controlling and disciplining the children and would use threats of "physical discipline or harming the children." Also, appellant never followed through with promises to enroll in behavioral counseling. Finally, appellant had financial difficulties, which ultimately led to her eviction. Since August 31, 1995, appellant has been limited to supervised visitation of her children.
The record does not reveal appellant has made significant progress in creating a secure home for her children. The trial court's conclusion that appellant was unlikely to be able to provide a stable environment "within a reasonable time" is supported by clear and convincing evidence. The first assignment of error is overruled.
In her second assignment of error, appellant proposes that instead of granting the motion for permanent custody, the children should have been placed in long-term foster care. As appellant correctly notes, under certain circumstances, long-term foster care is an alternative. R.C. 2151.415. However, the record does not suggest appellant's situation is likely to improve in the foreseeable future. Accordingly, long-term foster care is not in the best interest of these children. See R.C. 2151.415(C)(1). In any event, the statutory scheme does not require the trial court to choose long-term foster care where the vigorous statutory requirements for termination of parental rights have been met. The second assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.
[1] Appellant's six older children are Twyla Johnson, age ten; Terry Adams, age nine; Rashawn Johnson, age eight; Terisha Johnson, age six; De'Anthony Broadus, age five; and Brian Johnson, age four.
[2] As part of the same court entry, the court also ordered that the parental rights of "Vidal Keith, Ronnie Perry, Terry Adams, Brian Doby and any other alleged or unknown fathers, as same relate to these children, will be terminated." This portion of the trial court order has not been appealed by any of the relevant parties.